Whitakeb, Judge,
delivered the opinion of the court:
Plaintiff sues to recover the sum of $151,862.11, the deductions made by defendant for 443,398 cubic yards of alleged excess overdepth and overslope dredging.
Plaintiff had a contract for performing certain dredging work in Cape Cod Canal and in Hog Island Channel in Buzzards Bay, Massachusetts, including the dredging of a channel leading into Onset Bay. Plaintiff was required to dredge the channel leading into Onset Bay to a depth of 17 feet over a bottom width of 100 feet. It was required to dredge a channel in the Cape Cod Canal to a depth of 32 feet over a bottom width of 315 feet. To cover inaccuracies in the dredging process, an excess depth of 3 feet was allowed, for which payment was to be made. Payment was also to be made for all material removed from the sides up to a line running upward from the edge of the bottom of the cut on a slope of one foot vertical to 2% feet horizontal.
After the work had been completed it was ascertained as a result of soundings and sweepings that 443,393 cubic yards had been removed beyond the allowable depths and side slopes. Of this amount 258,005 cubic yards were deducted for excessive side-slope dredging and 185,388 cubic yards for *842 excessive overdepth dredging. Of this quantity 28,527 cubic yards for excessive overdepth dredging and 29,550 cubic yards for excessive side-slope dredging pertained to the Onset Channel work. Payment for all this yardage, except that in the Onset Channel, having been refused, plaintiff brought this suit.
On page 132 of its brief plaintiff sets out its three propositions upon which it relies for relief. Summarized, they are as follows: (1) the failure of the contracting officer to prescribe the overcuts to be made to prevent the encroachment of material from the sides of the dredged cut; (2) defendant’s failure to make sounding surveys behind the dredging as the work progressed to determine whether there was excessive overdepth or side-slope dredging; (3) its failure to reduce the quantity of excessive overdepth and side-slope dredging by 25 percent to eliminate material removed by erosion.
It is not disputed that 258,005 cubic yards of material have been removed from the side slopes more than the specifications called for, nor that 185,388 cubic yards have been removed from the bottom more than that called for by the specifications.
1. Plaintiff says that some of the excess material on the bottom was removed by erosion and, therefore, it says, it was improper to make any deduction therefor. All deductions made were from material actually removed by plaintiff, as shown by scow measurements. The amount to be deducted was ascertained by surveys of the bottom and sides made as the work progressed or by intermediate surveys or by final surveys made after a particular section of the work was completed. It is not disputed that these surveys showed that the stated amount of excess materials had been removed, whether by dredging or by erosion; and we are of the opinion that, even though some of it was removed by erosion, the deductions were properly made under the provisions of the specifications.
Section 4-04 provides for the measurement in the scows of the material removed and for soundings or sweepings to be taken “behind the dredge as the work progresses”. This *843 was for the primary purpose of determining whether or not the required depth had been reached; but if it should disclose also that there had been excessive side-slope dredging or excessive dredging in the bottom, the specifications provided that deductions therefor were to be made from the monthly estimates. These soundings and sweepings, however, rarely, if ever, disclosed with accuracy the extent of the excessive overdepth or side-slope dredging, and deductions were not based upon them, but were based on intermediate or final surveys. Intermediate surveys were used where possible so as to eliminate deductions caused by later erosion; but where further dredging had to be done after the intermediate sur- ■ veys, deductions were based upon the final surveys.
The use of the final surveys to determine the deductions in some instances was in accord with the provisions of paragraph 4-07 of the specifications. This reads:
Final Eanamination and Acceptance: As soon as possible after the completion of such sections established in paragraph 1-02 or subdivision thereof as in the opinion of the contracting officer will not be subject to injury by further operations under the contract, such area will be examined thoroughly by sounding and by sweeping, as deemed advisable by the contracting officer.
*{* *** if* if»
Final acceptance will be subject to proper deductions or correction of deductions already made on account of excessive overdepth or excessive side-slope dredging (par. 4^03), and any such deductions or correction of _ deductions will be included in the next monthly estimates. * * *
Plaintiff complains that the soundings and sweepings were unduly delayed, but this complaint is not justified by the testimony. We are of opinion that the defendant made them as promptly as possible in order to eliminate so far as it could deductions of materials removed by erosion.
Furthermore: Paragraph 1-02 of the specifications shows that what the defendant wanted was a depth of 32 feet in the Cape Cod Canal and a depth of 17 feet in the channel leading into Onset Bay. The provision for an allowable overdepth *844 of 8 feet was only “to cover inaccuracies of the dredging process,” and not because defendant wanted this depth, as is shown by paragraph 4-08 of the specifications. It was recognized that a contractor undertaking to get the desired depth of 32 feet would of necessity sometimes go beyond the 32 feet; so, the defendant agreed to pay it for the yardage removed beyond the 32-foot depth up to 3 feet beyond. But the findings show that the contractor did not try to limit its dredging to a 32-foot depth, but deliberately dredged to a depth of 35 feet throughout the channel, and on many occasions dredged to depths ranging from 37 to 39% feet. This was in order to secure payment for the excess yardage. If plaintiff had followed the spirit of the contract and had not intentionally dredged below the depth of 32 feet, it is not unreasonable to assume that erosion would not have removed material below the 35-foot level, and no deduction would have been made from scow measurement for materials removed by erosion from below this level.
The contractor dredged to a depth of 35 feet notwithstanding the fact that it was put on notice by paragraph 1-08 of the specifications that experience under recent. contracts had shown that about 25 percent of the material required to be taken out had been removed by erosion, making it necessary for the contractor to remove by dredging only 75 percent of the materials which it was desired to remove.
Although defendant did not desire a depth of more than 32 feet, and although plaintiff deliberately dug to a depth of 35 feet, the defendant nevertheless paid it for all materials removed to the 35-foot level. The specifications in article 4 — 03 expressly say that materials removed from beyond this level will be deducted from the scow measurements “and will not be paid for.”
2. Plaintiff’s chief contention with respect to the excess materials removed from the side slopes is based upon its assertion that the specifications required the contracting officer to provide for overcuts to take care of the material, which slid down into the bottom from the sides, and that under the specifications it was entitled to payment for the- *845 material removed from these overcuts. It is true that paragraph 4-03 of the specifications does provide that:
The contracting officer will prescribe the overcuts to be made to prevent the encroachment of material from the sides of the dredged cut, and material actually removed on his order from the prescribed overcüts, whether dredged in original position, or after having fallen into the cut, will be estimated and paid for.
It is also true that the contracting officer did not prescribe any overcuts. Notwithstanding this, we do not think that plaintiff is entitled to recover for the excess material removed from the sides.
In the first place, the specifications in paragraph 4r-08 expressly say, “Material taken from beyond the limits as extended in this paragraph will be deducted from the total amount dredged as excessive over-depth dredging or excessive side-slope dredgi/ng and will not be paid for.” (Italics in original.) This means, of course, that materials taken from beyond the side-slope “pay line,” however taken, whether by dredging or by erosion, will not be paid for. The defendant was willing to pay for all material removed up to a line of 1 on 2yZ) but if the plaintiff by its dredging operations or as a result of its dredging operations removed more materials than this, defendant expressly said it would not pay for it. Plaintiff knew that some material from beyond tliis line would probably be removed by erosion, and it is faced with the fact that the specifications expressly say that this material will not be paid for.
In the second place, paragraph 4-03 of the specifications does not make it mandatory upon the contracting officer to prescribe any particular overcut. He might have prescribed an overcut of 10 feet, of 5 feet, of 3 feet, of 1 foot, or 6 inches, or none at all, depending upon what he thought was necessary under the circumstances. In determining whether overcuts were necessary the contracting officer, no doubt, concluded, since plaintiff was consistently going to a depth of 35 feet, whereas the defendant desired only a depth of 32 feet, that such material as would slide down from the banks would not *846 fill up the bottom of the channel to a depth of less than 32 feet desired by the defendant and, hence, it was not necessary to prescribe any overcuts.
But, whether or not this was the reason actuating the contracting officer in not prescribing any overcuts, nevertheless there was no duty cast upon him to prescribe any particular overcut and, therefore, plaintiff cannot say just how much of the deduction was due to the contracting officer’s failure to prescribe overcuts. Even though paragraph 4 — 03 does make it mandatory upon the contracting officer to prescribe some overcut, plaintiff necessarily is unable to show how much of the deduction was due to his failure to prescribe any.
3. It seems plain from what we have already said that plaintiff’s third contention, to wit, that the defendant made no allowance in making its deductions for the material removed by erosion, is without merit. Had plaintiff not deliberately dredged to the 35-foot “pay limit” and had it not dredged immediately up to the permissible side-slope, but had followed proper engineering practice and dredged only so close to the side slopes as was necessary to remove all of the material required to be removed, whether by dredging or by erosion, and had it undertaken to obtain only a 32-foot depth, there might be some merit in plaintiff’s contention; but there is none, we think, in view of the procedure deliberately followed by it.
4. Heretofore we have referred to the work done in the Cape Cod Canal. What we have said is equally applicable to the work in the channel to Onset Bay, except in one particular: In the Cape Cod Canal the representative of the contracting officer on the job set the range limits of the channel to be dredged, at first, 5 feet channelward from the edge of the required width. This was on the assumption that the average overdepth would be 2 feet, and, by setting the stakes at this point, the required side-slope would be obtained. Later, when he observed that plaintiff was dredging to the full allowable overdepth of 3 feet, he then set his stakes in 7y2 feet from the edge of the required width. On the other hand, in the channel to the entrance of Onset Bay the contracting officer’s representative set his stakes at the edge of the full 100-foot width required. Partly as a result of this, *847 possibly, since it dredged up to the very limit of the ranges fixed, plaintiff dredged 3 feet beyond the required slope.
But, whether or not the placing of the stakes at the extreme limit of the width to be obtained was in any part responsible for this excessive dredging, plaintiff is not entitled to recover, because it has been paid for this excessive dredging. The contracting officer was of opinion that it was not entitled to be paid therefor, and proposed to make a deduction for the excess, but this deduction was never made.
We are of opinion that the deductions made were properly made and that plaintiff is not entitled to recover. Plaintiff’s motion is overruled and its petition will be dismissed. It is so ordered.
LittletoN, Judge; and Whalev, Ohief Justice, concur.
MaddeN, Judge; and JoNes, Judge, took no part in the decision of this case.